20-59-69 Memphis Ctr for Repro Health v. Herbert Slatery III Oral argument not to exceed 15 minutes per side. Ms. Campbell, you may proceed for the appellants. Thank you, Your Honors. May it please the Court. Sarah Campbell on behalf of the State of Tennessee. I'd like to reserve three minutes for rebuttal, please. Fine. In preterm Cleveland, this Court, sitting on Bonk, held that Ohio's abortion anti-discrimination law did not violate a woman's right to abortion. That holding forecloses plaintiff's argument here that the substantive due process clause bars Tennessee's similar anti-discrimination provision. But the District Court preliminarily enjoined Tennessee's provision on a different ground, that it's void for vagueness. In doing so, the Court egregiously misapplied the void for vagueness doctrine and engaged in exactly the sort of antagonistic statutory interpretation that the Supreme Court condemned in both Casey and Gonzales. You're speaking about Section 217 right now, not 216, correct? That's correct, Your Honor. So there are two provisions that are at issue here, two parts of this recently enacted bill that are at issue. Section 217 is what I refer to as the anti-discrimination provision. Section 216 is what I refer to as the timing provisions. Those prohibit abortion at particular gestational ages. The District Court also erred by preliminarily enjoining the timing provisions because it didn't even apply the now governing undue burden standard to those provisions. It simply invalidated them under a per se rule of invalidity that this Court rejected in preterm Cleveland. I'd like to begin with vagueness. The District Court made two vagueness holdings that weren't reversal. First, it held that the anti-discrimination provisions substantive criminal prohibition is unconstitutionally vague. It also held that the medical emergency provisions that apply, the affirmative defenses that apply to both the anti-discrimination provision and the timing provisions are unconstitutionally vague. I'll start with the vagueness holding as to the substantive criminal prohibition. The District Court gave essentially two reasons for finding that prohibition unconstitutionally vague. I'm sorry to interrupt you. Can I ask you a quick question about it? Does the statute require actual knowledge? Yes, Your Honor. The Tennessee legislature has defined knowledge for purposes of the entire criminal code to require an actual awareness of the circumstances at issue. And the Tennessee Court of Criminal Appeals has interpreted that to require actual knowledge. We found no case that's interpreted it to the contrary. And you can contrast the definition of knowledge with the definition of recklessness in the Tennessee code to see that recklessness does involve constructive knowledge, whereas knowledge is an actual knowledge requirement, Your Honor. And so that's one way in which the District Court veered here. It held that the terms knows and because of terms that are pervasive in federal and state statutory law are unconstitutionally vague because the statute itself failed to define them. That holding was erroneous for several reasons. First, the Supreme Court and this court have made clear that a statute doesn't need to define terms if those terms have a well-settled meaning. The Tennessee legislature did define the term knows here. As I just mentioned, it requires an actual awareness of the circumstances or conduct at issue. And the meaning of that term is well-settled for purposes of giving defendants understanding of what that term means. So although the legislature didn't need to define it, it certainly has here, and that definition squarely applies. The District Court also faulted the legislature for not defining the phrase because of, but it didn't need to define that term because the phrase because of has a very well-understood meaning. Both the Supreme Court and this court have held that that phrase and similar phrases like by reason of or on account of incorporate the traditional standard of but-for causation. In fact, this court in United States v. Miller held that the rule of lenity required the phrase because of to be interpreted according to that traditional but-for standard, as opposed to a more ambiguous, significant contributing factor standard. So when the District Court said that. If hypothetically, if a woman says to the provider, I would like to have an abortion. I'm very poor, and I already have three boys. Would her abortion be because of the sex of the child or would it be because of her being poor, or is it because of both, or is it because of neither. On those facts, Your Honor, I don't think that that would give the provider the requisite actual knowledge that the woman. But I'm getting to because of, he's heard her statement that I've given you. I'm very poor, and I don't, I already have three boys. That would, that would indicate that she's getting the abortion because of her economic circumstances. Why isn't it because of the sex? We don't even know the sex of this child. Suppose we do know, at a fact, suppose we do know that there was what's very easy now prenatal blood testing, I guess, that can tell you the sex of the child. It could, we really don't know the but-for cause, and in that situation. If she says, I'm very poor, and I'm expecting a boy. I think the provider could think that the primary reason, the but-for reason for the abortion is that the woman is in difficult economic circumstances. I don't think that those facts would give her actual knowledge. And this is the key here. The statute has a scienter requirement. The statute requires the prosecution to prove that the provider has actual knowledge of that but-for reason. So plaintiffs are complaining that they really can't know the reason. It's difficult to know. But I'm gathering then that if a woman tells the provider that there are three reasons why she is getting an abortion, or two reasons. I'm getting an abortion because I'm having a boy, and because I'm poor. That is not going to meet the but-for test? We don't believe it would. If all of those reasons play into the decision, and the woman wouldn't have obtained the abortion for only one of those reasons. It was really all of those reasons contributing toward the eventual decision. Then no one of those reasons would be the but-for cause of her obtaining the abortion. But critically, just to return to the point I was making a moment ago, the statute requires the prosecution to prove actual knowledge. So if it's true, as plaintiffs contend, that it's really impossible to know another person's motivations for seeking an abortion. Then that's a problem for the prosecution. Because the prosecution has to prove that the provider has actual knowledge that it's the but-for cause. This is really the point that the Supreme Court in United States v. Williams and this court in United States v. Paul made. The reasonable doubt, the vagueness doctrine, sorry, the due process clause has multiple aspects that protect defendants. The vagueness doctrine is one of them. But allocation of the burden of proof is another. And the beyond a reasonable doubt standard allocates the risk of a lack of evidence to the prosecution. So it's the prosecution's burden to prove actual knowledge. And the fact that the statute has that scienter requirement alleviates any vagueness concerns, even if there were any in the actual terms of the statute. I see your time is going quickly and you have not yet talked about the heartbeat provision. Could you address that? Sure. Yes, Your Honor. So the timing provisions, there are a number of different provisions, all of which are severable. The earliest one is heartbeat. The latest one is 24 weeks. And they're incremental between that. Our position is that the district court did not even apply the undue burden standard, which preterm Cleveland makes clear is this universal standard that applies to abortion regulations. There are no findings that the district court made about which, if any, of these different provisions pose a substantial obstacle to abortion for a large fraction of women. Well, just thinking about the heartbeat provision, as I understand it, once a heartbeat is found, the section 216 would prohibit any abortion. Am I correct? That's correct. Okay, so why isn't that a substantial obstacle to having an abortion that you can't have an abortion? We recognize that for some of the earlier timing provisions, it is likely that such a finding could be made. That finding was not made here. The district court didn't engage in that analysis at all. But the timing provision started. But isn't it completely logical that if you cannot, and something like 80-some percent of women have abortions after the time when normally a heartbeat is able to be detected. If something like 80 percent of women can't get abortions because a heartbeat has been detected, yet they want abortions. Why isn't that a substantial obstacle to their having abortions? I don't know why we need a finding if you're correct that there wasn't such a finding. Your Honor, the timing provisions, as I said, begin at fetal heartbeat, but they go all the way up to 24 weeks. We think that there is a point at which the state's interests, which include interests that are distinct from the interests that were at issue in Casey. They include the state's interest in protecting the integrity of the medical profession, the state's interest in preventing fetal pain. In your reply brief, you seem to kind of draw a line at 15 weeks. Can you explain the rationale for that to us? Yes, Your Honor. So we do draw that line at 15 weeks for a couple of reasons. The first is that at that point, there is a growing medical consensus that an unborn child is capable of experiencing, of not only having pain, but perceiving that pain at that point in time. We submitted declarations from Dr. Maureen Kondek and Dr. Robin Perucci that make that point. So the state has an interest at that point and a very strong interest in preventing fetal pain. And 15 weeks is the point at which plaintiffs, the abortion providers, begin using D&E abortions, which involve dismemberment of the unborn child. So we think the combination of those two things make the state's interest especially strong. In addition, the data that we presented from Ms. Leffler shows that already well over 90% of women in Tennessee who obtain abortions get those abortions before 15 weeks. And we think that our large fraction analysis finds ample support and precedent. In Casey, the court said that the constitutionality of an abortion law should be measured based on the conduct of women it actually affects. And so, you know, a timing provision like this affects not only women who might miss that cutoff, but it affects women who will change their behavior in order to get an abortion earlier. Ms. Leffler, Pre-Term Cleveland makes clear that alternatives to abortion are important in the large fraction analysis. I see that my time has expired, Your Honors. Thank you. Thank you. Ms. Mercado. Good morning, Robby McCladden for Plaintiffs at Police and the Police Department. We are here regarding two sets of abortion bans. I'll touch briefly on the cascading bans and then turn to the reason bans and conclude with the medical emergency defenses. First, the district court correctly held that this first set of bans, cascading bans, are unconstitutional based on decades of Supreme Court precedent. And defendants have conceded that the only application of these bans is to pre-viability abortion. Under decades of Supreme Court precedent, this makes them unconstitutional. The district court also correctly held that the second set, the reason bans, are likely unconstitutionally vague, a claim that was not addressed in pre-term. The district court correctly held that none of the state's arguments grapple with what makes this statute unique. The reason bans are unique, first, among other reason bans, and second, among all other criminal laws. First, all other reason bans have clarifying elements such as in whole or in part or solely. I'm sorry to interrupt you. Can I ask you a question? Can the state ever ban abortions that are based on the race, gender, or potential condition of the fetus? Your Honor, that legal question would go to a substantive due process claim, which is not before this court. The challenge is before this court here. Can I ask you that? Are you saying we can't decide the substantive due process claim in front of us? Is it not in front of us at all? It is not. Neither party appealed the decision from the district court regarding the substantive due process claim, so it's not before this court. Based on the court's recent decision in pre-term, we submit that plaintiffs should go back to the district court and belt the record there. Here, the challenge is the procedural due process violation alleged under the vagueness doctrine. Let me ask a follow-up to that. Assume then a state could, how could they do it in a way that would suffice in your mind under void for vagueness? There are a number of ways that states around the country have enacted reason bans that don't present vagueness issue here. For example, most other states include elements like in whole or in part or solely, or they have other elements that provide positions cover when they provide an abortion in good faith that they believe that their conduct is conformed to the law. That's not the case here. The statute here is unique among both reason bans and all other criminal laws. And under the state's most recent definition, because of, as but for causation, the statute is particularly unique because it imposes severe criminal penalties based on a physician's knowledge of another person's but for motivations. The state has never identified an analogous statute, and they've never been able to articulate what actually violates the law. Let me give you to Ohio and California have various sexual offenses that require the prosecution to prove that the defendant knew the victim was incapable of giving legal consent consent because of some condition. Would those survive? Yes, Your Honor. Invalidating the statute here would not affect such statutes. What's the difference? Explain it to me. Certainly. So as the state as this as the court has made clear in the United States, you know, are assessing but for motivations is a thornier question than simply understanding why someone did something or did not do something or whether or not they did it. So in the instance of consent, for example, or an inability to provide consent. The analogous question as the statute presents here would not be whether or not the person had capacity to consent, but why they did not have the capacity to consent and the degree to which a particular motivation was a motivation. But once you some of those cases in Ohio and California, you have to know the state of mind of the victim. Right, certainly. So why isn't that very similar in that it's knowledge because of the state of mind. Well, in this case, knowledge is required of something that is indeterminate and vague, and that's as under the state's current definition, but for motivation of a patient seeking abortion. As the Supreme Court stated in Williams, what renders a statute vague is not the possibility that it will sometimes be difficult to determine the incriminating fact it establishes to be proved, but rather the indeterminacy of precisely what that fact is. Here, that fact is under the state's current definition, whether the patient was seeking an abortion for a but for prohibited reason. And that's what makes this statute uniquely vague. So if someone comes in and says, I'm getting abortion because of down syndrome, you're saying that wouldn't that would be vague for a doctor. There may be instances where conviction is more likely or less likely under the statute, but given the language of the statute, a physician could be prosecuted under a wide array of circumstances and the statute fails to advise them of when they can. But couldn't you argue that in every knowledge plus but for case. I mean, we have hundreds, if not thousands of laws nationwide that have this combination. Your Honor, there are actually no other statutes that impose liability on a physician or a defendant based on their knowledge of another person of third parties but for motivations. But my point is you now you're tying it to the particular actor but we've never done that you look at the language of the crime and the language of the crime this exists throughout the country. And so, I guess my question is, if we tie it to the language of the crime, aren't we potentially going to invalidate over 3000 laws. No, Your Honor. As the district court held, none of the state's arguments get at what makes the statute unique invalidating the statute will have no effect on other reason vans or any other criminal laws. The reason vans violate the word for vagueness doctrine, because they fail to provide notice to positions of what their conduct will be that violates the vans and the state has never identified an analogous statute. And contrary to the state's assertion that the term knows or that knowledge is a clarifying center as this court stated in the wine, a risk of uncertainty in a statute may be cured by a knowledge requirement. But only if the knowledge requirement precludes prosecution if the physician believes in good faith that they've complied with the law. That's not the case here. I'm a physician with a good faith belief that a certain motivation was not the but for motivation could still be prosecuted under the law and would have no defense. Based on the fact that they're good faith belief that they weren't violating the law where they're ignorant. Turn to the medical emergency affirmative defenses. That's Certainly. Finally, the district court correctly determined that both sets of bands are unconstitutional for the additional reason that they lack valid medical emergency exceptions. As the district court again correctly found the bands medical emergency provisions suffer from the very same defects as those invalidated for vagueness in the sports decision and point of it. They require a physician's medical emergency determination, a determination that in this court's own words is fraught with uncertainty and susceptible to being subsequently disputed by others. To be reasonable and made in good faith. Well, at the same time, laughing any mens rea that would protect physicians from criminal liability. They did not intend to violate the law. Under such a standard position may be held criminally liable. They believed they were acting reasonably and in accordance with his or her best medical judgment. What if we struck reasonable as the state suggests we do in their briefing. Yes. Go ahead. I'm sorry. The state has argued that the term reasonable could be elided from the statute of the Tennessee's doctrine of elision. We would submit that Tennessee's doctrine of elision is not applicable here because it would require a determination that legislature intended to enact the statute without that term. Why not just certify that question to the Tennessee Supreme Court and get a definitive answer then. Certainly that path is open to this court. However, the Tennessee Supreme Court is not going to be able to provide a construction that would provide clarity to statute for two reasons. First, one way of introducing clarity into the statutory language would be to import and hold her in part or solely. But that is clearly not what the legislature intended, given that all the reason bands that were examined by the legislature include other terms and they explicitly chose to forge their own path here. And the other kind. And second, I'm sorry to interrupt you. Wouldn't that be an option open to the Tennessee Supreme Court, though they can do anything they want to save the statute and the severability clause basically says do anything possible to save it. Well, the Supreme Court is still constrained by the prohibition on judicial legislating and to rewrite those terms into the statute that would be to basically rewrite the statute. And Tennessee law that provides medical emergency provisions and other contacts and other statutes that restrict abortion. Are different from this is the only medical emergency provision that's ever been enacted by Tennessee with this language. If the medical emergency provision required only a good faith determination by the physician that would not present the biggest challenge here. But there is no way to distinguish this case from point of edge, which is. Which has helped that what makes this type of medical emergency provision vague is a combination of subjective and objective elements without a mens rea require that would allow physicians to rely on their 50th judgment. Can I ask a different question related to that? Did you argue your vagueness claim below on a theory of arbitrary enforcement? Well, as the Supreme Court has made clear in Colander, there are two touchstones to the vagueness doctrine. The first is the law's provision of notice to the defendant about how to confirm their conduct to the law. And if there is latent vagueness in the statute, whether or not there is a danger of arbitrary prosecution because of that lack of a clear standard. Both the touchstones of that doctrine are present here. Yeah, but I'm asking. I'm sorry. My question wasn't clear. Did you argue that below? Because I couldn't find it. Yes, we did. I can. No, you don't. I'll track it down if you did. Thank you, Mr. I have a little time left. So I sum up my argument quickly. The reason bands impose an inquiry. So indeterminate state has never been able to explain what actually violates it. It remains entirely unclear what role a prohibited reason must play in a patient's decision making to trigger the law. This renders Tennessee's law distinct among all the reason bands and leaves physicians with inadequate notice about how and when they could be subject to prosecution. Second, the fact that defendants, those charged with enforcing the law, have provided inconsistent definitions only lends to the credence to physicians' fear of arbitrary enforcement. And finally, the law offers no mens rea requirement that could protect the physician acting in good faith. For all these reasons, the court should uphold the district court's well-founded preliminary injunction of the reason bands. Similarly, the cascading bands are clearly unconstitutional under decades of Supreme Court precedent. And as the state has conceded, the only application of those bands is to pre-viability abortion. Under Roe and Casey, that makes those bands unconstitutional under decades of precedent. And finally, the medical emergency affirmative defenses are unconstitutionally vague, which separately dooms the bands. Under Casey, any restriction on abortion must have a valid exception for when an abortion is immediately necessary to preserve the life or health of the patient. And so under directly applicable Sixth Circuit and Supreme Court precedent, that also separately invalidates the laws. So your opponent was arguing here and in the reply brief that at the least with respect to the heartbeat provision that 15 weeks was a cutoff because there was a different reason at that point, which was the fetus feeling pain. Can you address that? She pointed to two doctors on her side that said that the fetus felt pain at that point in time. Was there evidence to rebut that? Yes, Your Honor. Plaintiffs provided declarations that contested those findings and have reflected the consistent medical consensus that was recognized also in the sports decision EMW that that is a practical impossibility prior to 24 weeks. But also, as the court EMW recognized, even assuming the legitimacy of the state's interest in fetal pain, there is no state interest sufficient to justify a prohibition on abortion prior to viability. I asked a related question, which is not on the second part of what you just said, but on the first part, which is don't we have to defer? Didn't the legislature make findings on fetal pain? And don't we have to defer to those findings under controlling precedent? No, Your Honor. Legislative findings, as the Supreme Court has made clear, is not the same thing as evidence, and Whole Woman South, the court made that determination. And also in Gonzalez, the court recognized that those kinds of legislative findings are not dispositive of any factual questions. And in fact, the court made clear in Gonzalez that there was evidence in the record that actually contradicted the legislative findings. So the court is not required to defer to those findings, particularly where they are clearly out of line with the medical consensus as reflected in the evidence. But to return briefly to Judge Moore's question, there is simply no state interest that can justify a prohibition on abortion prior to viability. No one disputes that 15 weeks is prior to viability. And as the state has conceded repeatedly, this law only applies to pre-viability abortion. And in that, in every application, it operates to deprive women of the ultimate decision determining their pregnancy. There was a central holding of Roe that was reaffirmed in Casey that prior to viability, the state may not override a patient's decision making. And that decision must be the patient's. And the patient's role is to evaluate whatever interests are relevant to her and to make the ultimate decision to have an abortion. And so the cascading bans under decades of harassment take that right away. They directly police the heart of the right, removing the decision from the woman entirely. And that's why a district court recognized under many decades of directly applicable precedent, the cascade is clearly unconstitutional. And briefly to conclude, the reason bans also suffer from unconstitutional vagueness and imposing a procedural due process violation on physicians. And finally, the medical emergency affirmative defenses are clearly unconstitutional under Koinovich. And this court should affirm the district court's well-reasoned preliminary injunction order. Thank you. Excuse me, can I ask a question? Just out of curiosity, when this complaint was filed, listed among the defendants, in addition to Attorney General Slatery, are several local district attorneys. Why was that done and how were they chosen? What does that tell me about this case, if anything? Certainly, the district attorneys that were named as defendants in this case are all of those tasked with enforcing these laws against the plaintiffs wherever they are located. So the defendants that include the district attorneys represent the counties where plaintiff's clinics are located. But it's notable that although the actors with the obligation to enforce these laws are defendants in this case, they have never articulated how physicians can truly confirm their conduct to this law. Have they ever enforced it since the stay has been in place? Are there any as-applied challenges existing right now? No, there are no as-applied challenges existing now. The records before this court is from the reinforcement challenge that was brought. But as plaintiff's declarations extensively make clear, there are a whole host of situations that will implicate the bans. Physicians are already curbing their conduct to ensure that they don't provide abortion whenever implicated reasons. But no one's been prosecuted? No, no one has been prosecuted at present. I see my time is up. Thank you. Ms. Campbell. Thank you. I'd like to focus my brief time on rebuttal on the medical emergency affirmative defenses. Our position, as is expressed in our brief, is that Voinovich was wrongly decided, principally for the reasons that Judge Boggs expressed in his dissent in that case. We recognize that this court is bound by that precedent, but this court is not required to extend that precedent to a different context. And this case involves a different context. The medical emergency provisions here are affirmative defenses. They are not exceptions that are part of the criminal defense. The Supreme Court has said that the void for vagueness doctrine applies to laws that define criminal offenses and that fix the sentences for those. And the court has declined to apply it to different contexts. In Beckles in 2017, the Supreme Court declined to extend the vagueness doctrine to discretionary sentencing guidelines. This court should similarly decline to extend the doctrine to affirmative defenses. One of the main reasons for that is because a host of other general defenses that apply across the board to criminal offenses in Tennessee would be implicated. Tennessee has general defenses of necessity, self-defense, and defense of others, just to name a few, that employ the same reasonable belief standard. And Tennessee is not alone in that. Other states similarly employ a reasonable belief standard in their defenses. As Judge O'Stanlin said in his opinion in United States v. Christie, which we cite in our brief, the fact that extending the doctrine would call into question any number of criminal statutes, both federal and state, as a reason to decline to apply the doctrine in that new context. Even if this court finds that Boinovich should be extended to this different, distinct context involving an affirmative defense, it still doesn't require facial invalidation of either of the laws here. Gonzales and Preterm Cleveland make clear that the lack of a medical emergency exception is best addressed through as-applied challenges, not through facial invalidation. In addition, that any ambiguity or vagueness in that defense could easily be remedied through elision. The question is not whether the legislature would have preferred to include the term reasonable. It clearly did because it included it when it enacted the statute. The question is whether the legis- Yes, Your Honor. I'm curious. This medical emergency provision does not include an emergency based on mental health of the woman. Is that correct? It does not, Your Honor. Can you tell us whether that is unique or can you give us examples where that has been upheld? Your Honor, initially I'd just like to point out that plaintiffs never challenged the affirmative defense on that basis. I know. I was just curious. It struck me as interesting, shall I say. Voinovich did say that a medical emergency exception should encompass mental health conditions. My time has expired, if I may briefly conclude. Thank you, Your Honor. But that holding has never been extended. And in fact, the court cut back on that holding somewhat and tapped and said that the medical emergency exception just must encompass any significant health condition. And we think Tennessee's medical emergency provisions here easily satisfy that standard. Can I ask a follow-up, Judge Moore? Sure. If it was done for the mental health of the mother, would that be the but for? Yes, Your Honor. Our position is that the medical emergency provision is not even needed for the anti-discrimination provision. If the reason for the abortion is because of some health reason, either mental health or otherwise, of the mother, then that would be the but for reason. And even if the woman initially wanted to get the abortion because of a prohibited reason, at that point there would be two independently sufficient causes, and those are not but for causes. If hypothetically, then, a woman who has said that she wants an abortion because of a Down syndrome diagnosis, and the provider says, no, I can't do that because of the law, Section 217, if the woman then deteriorates into a mental health crisis, then, hypothetically, in that situation, you would be saying that the abortion is not because of Down syndrome, it is because of the mental health situation, and it is allowable then? Yes, Your Honor. That would be our position. Okay. Thank you. If there are no further questions, the State respectfully asks this Court to reverse the District Court's holdings and vacate the preliminary injunction. Thank you. Thank you both for your argument, and the case will be submitted.